Filed 5/16/23  Martinez v. L.A. Hardwood Flooring, Inc. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MELISSA MARTINEZ, | B307980 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC715464 |
| L.A. Hardwood Flooring, Inc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Affirmed.

Employee Justice Legal Group, Kaveh S. Elihu, and Sylvia V. Panosian for Plaintiff and Appellant.

Jackson Lewis, Andrea F. Oxman, Peter M. Waneis, and Dylan B. Carp for Defendants and Respondents.

## INTRODUCTION

Plaintiff and Appellant Melissa Martinez sued her former employer, defendant and respondent L.A. Hardwood Flooring, Inc. (L.A. Hardwood), alleging six violations of the Fair Employment and Housing Act, Government Code[1] section 12900 et seq. (the FEHA) in this employment discrimination action, as well as claims for wrongful termination in violation of public policy and failure to provide meal and rest periods under the Labor Code. Martinez also sued her former supervisor, defendant and respondent Ray Chavez, alleging harassment. L.A. Hardwood terminated Martinez's employment after coworkers reported that she destroyed a customer application and Martinez neither accepted responsibility nor explained her conduct. Martinez, who was pregnant at the time, asserts that she was terminated because of her sex, pregnancy, and disability and that L.A. Hardwood's explanation for her termination is pretextual.

L.A. Hardwood and Chavez (collectively, defendants) successfully moved the trial court for an order granting summary judgment, and Martinez appeals from the judgment entered based on that order. We conclude that defendants met their burden of establishing that there is no triable issue of material fact as to any of Martinez's causes of action.[2] To the extent the

---

[1] All undesignated statutory references are to the Government Code.

[2] Martinez does not address the trial court's summary adjudication of her claims for declaratory relief, failure to pay wages, failure to provide itemized wage statements, and waiting time penalties. We consider those issues waived and do not address them further herein. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215.)

court erred in excluding certain declaration evidence, we conclude any such errors were not prejudicial.

## FACTS AND PROCEDURAL BACKGROUND

L.A. Hardwood sells hardwood flooring to stores and licensed contractors. Its showrooms are not open to the public. To shop at L.A. Hardwood, customers must have an established account. Potential customers typically apply for accounts by emailing or faxing an application to L.A. Hardwood.

Martinez began her at-will employment with L.A. Hardwood in July 2016 as a customer service representative. Martinez was hired to L.A. Hardwood's location in downtown Los Angeles, but was trained at its Pacoima location, where her supervisor was Jessica Palma (née Barajas). After three weeks, Martinez moved to the downtown location, where Chavez was her supervisor. Chavez reported to Yafit Algazi, who was then Vice President of Operations. Algazi was responsible for handling human resources issues. She worked with ADP Total Source (ADPTS), which provided a representative with whom Algazi could seek advice regarding human relations matters.

Martinez and other customer service representatives sat at a counter at the front of the showroom and were responsible for greeting and helping customers. The customer service representatives sat near a fax machine and were also responsible for checking the fax machine throughout the day.

In January 2017, Martinez complained to Palma that Chavez showed favoritism in his management and was disrespectful to certain employees. The comments of which Martinez complained were not of a sexual nature. Algazi had a meeting with Chavez and Martinez during which "[e]verything was put on the table." Martinez was satisfied with how the

situation was resolved. Sometime between January and March of 2017, Martinez made similar complaints about Chavez's treatment of her—specifically, that the way he spoke to Martinez was not very manager-like—to another L.A. Hardwood employee.

On April 1 or 2, 2017, Martinez learned she was pregnant. On April 3, Martinez approached Chavez with a coworker, Jasmine Chavarria, to let him know she was pregnant.[3] Martinez testified that she was nervous and crying when she approached Chavez. Martinez asked Chavarria to tell Chavez the news and, after she did, Chavez asked how far along she was. Martinez responded that she had taken a home test and needed to confirm it. Chavez asked why she would get herself into this situation and stated that he would now need to go through the process of hiring someone else and training them because Martinez would need time off. Martinez requested at least a day off to confirm her pregnancy with a doctor. Chavez suggested that she could do so after work or on the weekend. Martinez's doctor was only available during the week, so she faked stomach pains and went to an urgent care that evening to have her pregnancy confirmed.

On April 28, Martinez complained about Chavez's reaction to her pregnancy to Palma, who told Martinez she would raise the issue with Algazi. After Palma spoke to Algazi, Palma told Martinez to "Just leave it alone," and to "Just . . . do [her] job and just do what [she's] told." Palma also told Martinez that Algazi wanted to have a meeting with Chavez and Martinez, but

---

[3] Chavarria testified that she did not recall accompanying Martinez when she told Chavez about her pregnancy. In a declaration, Chavarria stated that she never heard Chavez or anyone else make inappropriate comments about Martinez's pregnancy.

Martinez did not want to have a meeting with Chavez. Martinez and Palma did not discuss the matter further. Martinez testified that she had wanted Algazi to give Chavez a warning or remind him of the policies regarding discrimination, but she did not do so. Martinez felt that Algazi favored Chavez.

Algazi informed Chavez that Palma had reached out to her regarding Martinez's complaint. She recalled that he asked, "Why did she call Pacoima?" Algazi replied with the "straight facts," which were that Martinez had reached out to Palma and "didn't even talk to [Algazi]," and that Palma had informed Algazi. Algazi testified that she did not think Chavez was frustrated, but simply "didn't understand why an employee would go a different channel." She did not know how he felt about Martinez reaching out to Palma or whether he took it personally. Chavez testified that he recalled learning about the incident from another employee but that he did not ask Algazi what had caused Martinez to complain to Palma.

Chavez asked Martinez to schedule her monthly prenatal check-ups around the workday. She testified that she had to miss one appointment because Chavez told her that she could start her shift late, but her doctor did not have an appointment available at that time. Chavez did not allow her to leave early that day and told her to schedule the appointment for another day. Martinez testified that she was "pretty sure" that she had been able to do so. Martinez agreed that, while employed with L.A. Hardwood, she was able to "[e]ventually" get the maternity care she needed from her doctor.

Chavez never told Martinez that she could not take maternity leave. The only comments he made in relation to Martinez's pregnancy that she found offensive were those made

5

on April 3, 2017. She had no other complaints about the way she was treated by anyone at L.A. Hardwood in connection with her pregnancy. Martinez did not request any accommodation other than taking time off work (i.e., coming in late or leaving early) to attend doctor's appointments.

Apart from the comment relating to her pregnancy, Martinez found Chavez's statement on one occasion that she was doing more talking than working to be offensive. She testified that other coworkers were not disciplined for talking or socializing at work, to her knowledge. However, Martinez also testified that she observed Chavez speaking in a similar manner to other employees as he spoke to her. She further testified that Chavez did not say anything else to her that she found upsetting or disliked.

On June 7, 2017, Martinez received a written warning because her cash box was $150 short, in violation of company policy. Chavez consulted with Algazi regarding the warning and what should be included. Algazi further testified that a written warning was appropriate because missing money is a more serious offense than, for example, coming in late. Martinez believed it was unfairly issued because she immediately informed Chavez of the issue. She testified that, after his comments on April 3, she believed that any comments from Chavez were related to her pregnancy. However, Chavez did not state that he was issuing the warning because of her pregnancy or because she was a woman, and Martinez did not tell anyone at L.A. Hardwood that she believed she had been issued the written warning because of her pregnancy. According to Martinez, Chavez said that he was sorry that he had to write her up, and she replied, "Okay. Well, I told you that the money was missing, and you told

me to put it back. So even after you made me put it back out of my own pocket, you are still going to write me up for a warning for it."

On June 27, 2017, another customer service representative, Paola Reyes, told Chavez that a contractor had called L.A. Hardwood and was upset because he had submitted a customer application and then re-faxed it because the first application was not received. Reyes stated that she and another customer service representative, Maria Arreola, had observed Martinez receive papers from the fax machine and then throw them away. Reyes informed Chavez that Martinez had told them not to say anything if asked. Reyes then showed Chavez the re-faxed papers. He also obtained the confirmation sheet for the original fax. Chavez confirmed Reyes's version of events with Arreola.

Reyes testified that Martinez held up a customer application, said "we never received this," and then tore it up. She stated that the customer later called in and that Arreola spoke with him. She also testified that Arreola had looked in Martinez's trash can and saw the torn-up application. She also stated that Arreola had taken the re-faxed application out of the machine. Reyes testified that she told Chavez about the incident that same day. Arreola testified that Martinez took a fax from the machine and ripped it and threw it away. She testified that she did not hear Martinez say anything and that she did not know that it was a customer application until later.

After he spoke with Reyes, Chavez contacted Algazi and told her what he had learned from Reyes and Arreola. He also informed her about the fax confirmation sheet. He testified that he did not recommend termination or any form of discipline.

7

Algazi told him that she would look into the issue and would let him know her decision.

Algazi testified that Chavez informed her of the incident but did not make any recommendation as to how she should handle the situation. Algazi reached out to ADPTS to discuss her options with a representative. The representative recommended that Algazi speak with Martinez and, depending on whether she took responsibility for her actions and apologized, the decision could be made to terminate or not. Algazi testified that, when she spoke with Martinez, Martinez failed to offer any explanation. She denied it and vaguely responded that she did not know or remember what happened. Algazi testified that, based on this response, she had no choice but to terminate Martinez's employment.

Martinez testified that, when Algazi showed her the application and told her that other employees had seen her rip up the application, she replied, "Okay. Who said that? Because we can clarify it right now with no problem." Algazi told her that who reported it was irrelevant and that she had given Martinez a chance to explain, so they would be terminating her employment. Martinez asked to speak to Algazi without Chavez present, but Algazi replied that Martinez could say whatever she wanted to say in front of Chavez. Chavez did not speak during the meeting. According to Martinez, Algazi did not say anything negative about Martinez's pregnancy, gender, or sex during the termination meeting.

Martinez did not testify as to whether she did or did not discard the application. When asked whether she recalled receiving an application and saying, "I never received this" before tearing it up, Martinez testified that she did not recall. When

asked whether she had denied tearing up the application to Algazi, Martinez stated that she had told Algazi that she did not recall.

Martinez testified that she had torn up other applications, including duplicates or illegible applications. However, Chavez had never told her that it was okay to tear up applications. Arreola testified that she did not throw faxes away and would file away faxes that were illegible or duplicates. She did not see other employees throwing faxes away and did not know of anyone being terminated for doing so. Reyes similarly testified that she did not throw away illegible applications or duplicate applications and did not observe others doing so. Chavarria testified that when they received an illegible application, they would place it on the side in a folder. She did not see anyone throw out applications that were faxed in. She testified that duplicates would be stapled to the original. Chavarria never asked Chavez whether they could throw out illegible or duplicate applications. Palma testified that, at the Pacoima location, she observed customer service representatives sometimes throw away documents retrieved from the fax machine, including "transmission slips or those vacation fliers that randomly come through." However, she did not inspect every document and did not know whether other documents were being thrown away. Palma did not know whether any employees were terminated for throwing away documents but knew that none of the employees she observed doing so were terminated. She did not know whether there was a company policy against throwing away documents from the fax machine.

During her employment with L.A. Hardwood, Martinez understood that she was supposed to take a lunch break every day. She testified that no one ever told her that she could not

9

take her lunch break, but that sometimes Chavarria, who worked as an accountant, would say that they were too busy to take lunch. Chavarria was not Martinez's supervisor. Martinez did not report such comments to Chavez, Algazi, or to the owner of L.A. Hardwood. Martinez testified that she understood L.A. Hardwood's rest break policy and took her rest breaks "most of the time." No one told her that she was not permitted to take a break, but she felt that she "had to" keep working if it was busy in the showroom. Sometimes Chavarria would say "No tens." A former coworker of Martinez's would not listen to Chavarria and would take her break regardless. To Martinez's knowledge, she was not disciplined for doing so. Martinez did not recall how many times she was unable to take a rest break or meal break, but that it happened on busy days. She estimated that she was unable to take a lunch break more than four but less than 10 times, and gave a similar estimate for the number of rest breaks she was unable to take. There were break rooms at both the downtown Los Angeles and Pacoima locations for employees to use during their breaks.

Martinez filed suit against L.A. Hardwood, asserting twelve causes of action: (1) discrimination because of sex, pregnancy and disability; (2) harassment because of sex, pregnancy and disability; (3) retaliation for reporting her pregnancy and requesting accommodations; (4) failure to prevent discrimination, harassment and retaliation; (5) failure to provide a reasonable accommodation for a disability; (6) failure to engage in a good faith interactive process; (7) declaratory relief; (8) wrongful termination in violation of public policy; (9) failure to pay wages due; (10) failure to provide meal and rest breaks; (11) failure to provide itemized wage statements; and (12) waiting

10

time penalties. Martinez alleged the harassment claim against Chavez too.

Defendants moved for summary judgment, and the trial court granted their motions and sustained various objections they raised to declaration evidence submitted by Martinez. Martinez timely appealed.

Martinez filed her original opening brief in June 2022. In their first brief, defendants pointed out that the statement of facts in Martinez's opening brief cited primarily to her memorandum of points and authorities in opposition to the summary judgment motion and her separate statement of additional disputed facts. They correctly noted that neither her briefing nor the separate statement constitutes evidence.[4] Defendants argued that this court should dismiss the appeal on the ground that Martinez failed to affirmatively demonstrate error because she did not provide an adequate appellate record, including citations to the record. (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935; Cal. Rules of Court, rules 8.124(b), 8.204(a)(1)(C).)

Martinez thereafter filed a notice of errata correcting more than 70 citations in her opening brief. It appears that Martinez added in citations to the evidence underlying the portions of the

---

[4] See *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139 ["Statements and arguments by counsel are not evidence. [Citations.]"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [citation to footnote of memorandum of points and authorities "obviously is not to admissible evidence in the record that indicates a triable issue of fact exists"]; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4 ["a separate statement is not evidence; it *refers* to evidence submitted in support of or opposition to a summary judgment motion"].

memorandum of points and authorities or separate statement she had previously cited. This Court ordered the original opening brief stricken, instructed Martinez to file a new opening brief, and stated that defendants may also file a new brief to replace their existing brief. Martinez was not permitted to file a reply brief. The parties have now done so.

## DISCUSSION

### 1.    Summary judgment was properly granted.

Martinez contends that there are triable issues of material fact with respect to her discrimination and retaliation causes of action because there is evidence that L.A. Hardwood's decision to terminate her was pretextual. Specifically, she argues that Algazi was a "cat's paw" for Chavez, that other employees destroyed and disposed of faxed documents without being terminated, and that L.A. Hardware's business justification was not entitled to credence. She further argues that there was a triable issue of material fact with respect to her failure to accommodate and to engage in a good faith interactive process causes of action because she was disabled by her pregnancy and because Chavez told her to go to appointments around the workday and did not permit her to take full days off. Martinez contends that evidence of a single incident of harassment is sufficient to defeat summary judgment and that the trial court improperly overlooked the incident with the cash box in granting summary judgment with respect to her harassment claim. Additionally, Martinez contends that there was a triable issue of material fact as to whether Chavez pressured and discouraged employees from taking their rest and meal breaks. Finally, Martinez argues that Chavez's conduct, which Algazi and the owner of L.A. Hardwood consented

to, created an issue of material fact as to whether L.A. Hardwood's conduct supports punitive damages.

For the reasons discussed herein, we reject these claims and conclude that summary judgment was properly granted.

### 1.1.   Standard of Review

We review an order granting summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

Summary judgment is appropriate only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 856.)

In the employment discrimination context, an employee's evidence submitted in opposition to an employer's motion for

13

summary judgment is construed liberally, yet "remains subject to careful scrutiny." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) The employee's "subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*Ibid.*)[5]

### 1.2. The court properly granted summary adjudication on the discrimination and retaliation causes of action.

As a preliminary matter, Martinez begins by discussing the cat's paw theory but fails to identify the elements of the discrimination and retaliation causes of action to which this theory pertains. "[T]he failure to provide legal authorities to support arguments forfeits contentions of error." (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) "Without a statement of the elements of a cause of action, supported by authority, counsel cannot establish whether triable issues of fact exist as to [that] cause of action." (*Id.* at p. 949.) This is grounds to conclude that any claim of error as to the discrimination and retaliation causes of action are forfeited on appeal. Although we exercise our discretion to reach the merits in this instance, we are not inclined to overlook the other failings in Martinez's briefing, discussed *infra.*

The FEHA provides, in relevant part, that "[i]t is an unlawful employment practice . . . . [¶] (a) For an employer, because of the . . . physical disability, . . . medical condition, . . .

---

[5] Since our review is de novo, we decline to address Martinez's contention that the court did not apply the correct standard because it labeled certain of her arguments unpersuasive and stated that she identified no evidence in support of certain claims.

sex, [or] gender . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . ." (§ 12940, subd. (a).) To establish a prima facie case for disparate treatment discrimination, plaintiff must show (1) she was a member of a protected class, (2) she is otherwise qualified to do her job, with or without accommodations, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive. (See *Guz*, *supra*, 24 Cal.4th at p. 355.)

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); § 12940, subd. (h).)

For both the discrimination and retaliation causes of action, once a prima facie case is established, the burden shifts to the defendant to produce evidence demonstrating the adverse action taken against the plaintiff was unrelated to his age or disability (i.e., a non-discriminatory reason). (*Guz*, *supra*, 24 Cal.4th at p. 357; *Yanowitz, supra*, 36 Cal.4th at p. 1042.) A legitimate, nondiscriminatory reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. (*Guz,* at p. 358.) "While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted *with a motive to discriminate illegally*." (*Ibid.*) The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate,

15

nondiscriminatory reasons were the sole basis for the adverse employment action. (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098.)

By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination. (*Guz, supra*, 24 Cal.4th at pp. 353, 357; *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309.) The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, "an actual causal link between prohibited motivation and termination." (*King v. United Parcel Service, Inc.*, *supra*, 152 Cal.App.4th at pp. 433– 434.) To show that an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' " (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) "Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862 (*Serri*).) To meet this burden, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ' " and hence infer " ' "that the employer did not act for [the asserted] nondiscriminatory reasons." ' " (*Hersant*, at p. 1005.) The stronger the employer's

16

showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive. (*Guz*, at p. 362 & fn. 25.)

We will assume for the sake of argument that Martinez established a prima facie case for discrimination and retaliation. However, L.A. Hardwood has met its burden to produce evidence "that its action was taken for a legitimate, nondiscriminatory reason." (*Guz, supra*, 24 Cal.4th at pp. 355–356; *Yanowitz, supra*, 36 Cal.4th at p. 1042.) Algazi ended Martinez's employment because of Martinez's failure to meaningfully address her coworkers' allegation that she destroyed a customer's faxed application and essentially told them to lie about it. This evidence satisfies L.A. Hardwood's burden to make a " 'sufficient showing of a legitimate reason for discharge.' " (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 225.)

Thus, we consider whether there is substantial responsive evidence demonstrating the existence of a material triable controversy as to discriminatory or retaliatory animus on the part of the employer. (*Serri, supra*, 226 Cal.App.4th at p. 862.) Martinez raises several arguments to support that the decision to terminate her employment was pretextual.

First, Martinez argues that, although Algazi did not have a discriminatory motive, she acted as Chavez's "cat's paw" in terminating Martinez. In support of this claim, she relies on two cases: *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533 (*DeJung*) and *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95 (*Reeves*). In *DeJung*, the plaintiff requested to work as a full-time court commissioner after previously splitting the commissioner position with another. (*DeJung,* at p. 540.) The presiding judge of the superior court, who was also chair of the

17

court's executive committee, informed the plaintiff that the committee " 'want[ed] somebody younger, maybe in their 40's.' " (*Ibid.*) When another court employee asked the presiding judge about the plaintiff, the presiding judge replied, " '[He's] a great guy, but we're looking for someone younger.' " (*Id.* at p. 541.) The plaintiff nevertheless applied for the position and was selected by a screening committee (which did not include the presiding judge) for an interview. (*Ibid.*) The interview panel, of which the presiding judge was part, did not rank the plaintiff among their top three candidates. (*Ibid.*) Ultimately, a candidate who was 43 years old and was not ranked among the top three candidates by the interview panel was appointed to the position of commissioner. (*Id.* at p. 542.) The plaintiff then filed a complaint for age discrimination in hiring. (*Ibid.*)

The court observed that the plaintiff was not required to "demonstrate that every individual who participated in the failure to hire him shared discriminatory animus in order to defeat a summary judgment motion . . . . [S]howing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory, even absent evidence that others in the process harbored such animus." (*DeJung*, *supra*, 169 Cal.App.4th at p. 551.) "[I]t can hardly be argued that Hardcastle, as the presiding judge and the chair of the Executive Committee, was not a direct and important participant in the Superior Court's decisionmaking process when it decided not to retain DeJung in the full-time commissioner position." (*Id.* at p. 552.)

Here, there is no evidence to support that Chavez was a significant part of the decision-making process. The undisputed

evidence establishes that, after learning about the incident, Chavez brought the matter to Algazi's attention, who was responsible for human relations. He did not make any recommendations regarding what action Algazi should take. Algazi testified that she did not make any decisions regarding Martinez's employment until she spoke with Martinez and Martinez responded only vaguely to her questions about what happened. Martinez herself testified that she told Algazi that she did not recall the incident and did not affirmatively admit or deny what Reyes and Arreola had told Chavez. While Chavez was present at the meeting at which Martinez was terminated, it is undisputed that he said nothing. The circumstances here thus bear little resemblance to the circumstances in *DeJung*, where the presiding judge who had repeatedly stated that the plaintiff was too old for the position was part of the committees that decided whether the plaintiff would be hired.

The circumstances are also distinguishable from those present in *Reeves*. The plaintiff in Reeves had acted on behalf of certain female coworkers in reporting sexual harassment by other employees, including Brian Sparks, to their supervisor, Fred Demarest. (*Reeves, supra,* 121 Cal.App.4th at pp. 100–101.) Demarest claimed to investigate the matter and concluded that there was no evidence of harassment, even though a female employee testified that she had complained to Demarest directly about the issue. (*Id.* at p. 101.) According to the district manager, Moira Susan Hollis, Demarest had acted improperly in investigating the matter on his own rather than reporting the claimed harassment to human resources. (*Ibid.*) Although Demarest asked the plaintiff not to enter the store after closing, the plaintiff asked to be let back in after his shift ended because

he urgently needed to use the restroom. (*Id.* at pp. 101–102.) Another employee, Sandy Juarez, refused to let him in and claimed that the plaintiff became irate and pushed her with both hands through the doors. (*Id.* at p. 102.) Sparks also testified that he saw the plaintiff push Juarez, although Juarez did not remember seeing Sparks in the area when the incident occurred. (*Ibid.* & fn. 4.) Juarez reported the incident to Demarest, and, after an investigation, the plaintiff's employment was terminated. (*Id.* at pp. 103–105.)

The plaintiff's termination involved four principal actors: "Juarez, who reported the May 31, 1998 confrontation with plaintiff as a battery; Demarest, who reported the incident to security as an instance of 'possible workplace violence'; [Darrell] Harrison, who conducted an investigation of the incident; and Hollis, who adopted Harrison's recommendation and formally discharged plaintiff." (*Reeves*, *supra*, 121 Cal.App.4th at p. 116.) While it was unclear whether Juarez's motives could be imputed to the defendant, "the evidence present[ed] ample basis for finding retaliatory motives and conduct on the part of plaintiff's unquestioned supervisor, Demarest[,]" including that he "resented and opposed plaintiff's efforts to secure relief for the women in the store from what plaintiff believed (with the agreement of at least some of them) was a pattern of sexual harassment." (*Id.* at p. 117.) He "acted entirely on the basis of accounts from Juarez and Sparks, each of whom had a reason— which could well have been readily apparent to Demarest—to

20

portray plaintiff's conduct 'in the worst possible light.' " (*Ibid.*)[6] He also "referred the matter to security rather than to the human resources department," and there was "substantial evidence that Demarest knew such a referral was substantially certain to result in the dismissal of [plaintiff]" since "every case he ever referred to security resulted in dismissal where it involved 'an allegation of improper conduct' comparable to the allegations against plaintiff." (*Id.* at pp. 117–118.)

With respect to the third actor, Harrison, "[t]he record includes no testimony by him concerning his reasons for recommending that Hollis dismiss plaintiff[]" and indicated that the plaintiff had told him about sexual harassment complaints that plaintiff had relayed to Demarest. (*Reeves*, *supra*, 121 Cal.App.4th at pp. 118–119.) The evidence further supported that his investigation "was heavily skewed to favor the ostensibly tentative conclusions of the reporting supervisor, Demarest[]" and failed to include any ameliorating circumstances. (*Id.* at pp. 119–120.) Thus, although it was "undisputed that Safeway has articulated a legitimate nondiscriminatory reason for its actions *with respect to district manager Hollis*, who made the ultimate decision to discharge plaintiff . . . . Safeway ha[d] failed to make a threshold showing that all material contributors to the decision acted for legitimate nondiscriminatory motives[]" and failed to "show[] that plaintiff cannot present sufficient proof to establish that retaliatory animus on the part of one or more

---

[6] The female employee who complained to Demarest about sexual harassment had listed Juarez among the coworkers by whom she had been harassed at Safeway. (*Reeves*, *supra*, 121 Cal.App.4th at p. 117.)

contributors to the decision was a substantial contributing factor in bringing about his dismissal." (*Id.* at p. 113.)

In *Reeves*, both witnesses to the incident that resulted in the plaintiff's termination had been accused of sexual harassment and had reason to portray the plaintiff's conduct in the worst light because he had raised the issue of sexual harassment to his supervisor. Here, Martinez identifies no evidence suggesting that Reyes or Arreola had any bias against her. Further, in contrast to Demarest, who referred the matter to security with the knowledge that this would likely result in the plaintiff's termination, Chavez referred the matter to Algazi, who was responsible for human resources. There is no evidence to suggest that Chavez knew that this course of action would result in Martinez's termination. Further, Algazi, who was the ultimate decision-maker, did not merely implement the recommendations of others, as Hollis did. There is no evidence that supports that Chavez made any recommendation as to what action Algazi should take. Algazi first consulted with a third-party human resources service, ADPTS, about her options and then met with Martinez and offered her an opportunity to explain before making her decision.

Under these circumstances, we conclude that there is no substantial evidence that would permit a jury to find that Chavez used Algazi as a conduit to terminate Martinez's employment.

Martinez also argues that the decision to terminate her employment was pretextual because she claims that other employees disposed of applications that were illegible or duplicates and were not fired. "To establish discrimination based on disparate discipline, it must appear 'that the misconduct for which the employer discharged the plaintiff was the same or

similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly.' [Citation.]" (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535.) "Another employee is similarly situated if, among other things, he or she ' "engaged in the same conduct *without any mitigating or distinguishing circumstances.*" ' [Citation.]" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172, italics added.) There is no evidence in the record indicating that another employee intentionally tore up an original customer application in front of coworkers and told them to say nothing about it, as Reyes claimed Martinez did. Other employees at the downtown Los Angeles location, including Chavarria, Reyes, and Arreola, denied disposing of even duplicate and illegible applications. While employees at the Pacoima location apparently disposed of duplicate and illegible documents, there is no testimony from any L.A. Hardwood employee stating that they thought it was permissible to dispose of original, legible customer applications. Moreover, there is no evidence in the record that anyone had previously reported such conduct to Algazi and that they were treated in a different manner than Martinez.

Finally, Martinez argues, without citation to the record, that L.A. Hardwood's proffered business justification for terminating Martinez's employment was not entitled to credence. Any statement in a brief concerning matters that are in the appellate record, whether factual or procedural, whether in the statement of facts, the procedural history, or the argument portion of the brief, must be supported by a citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [record

citations in statement of facts do not cure failure to include record citations in argument portion of brief]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [same].) Martinez's reference to approximately 12 pages of her statement of facts, which contains record citations, in support of this argument does not cure the failure. "To provide record citations for alleged facts at some points in a brief, but not at others, frustrates the purpose of [Rule 8.204(a)(1)(C)], and courts will decline to consider any factual assertion unsupported by record citation *at the point where it is asserted*." (*Alki*, at p. 590, fn. 8, italics added.) In their original respondent's brief, defendants, relying on *Alki*, argued that Martinez had failed to preserve another issue for appeal by merely referencing an earlier portion of her brief and failing to provide record citations. Accordingly, Martinez was on notice and had an opportunity to remedy this error in her corrected opening brief. She failed to do so and thus waives this contention.

We therefore conclude that a trier of fact could not reasonably conclude that L.A. Hardwood's stated reasons for terminating Martinez's employment were implausible, inconsistent or baseless and that the court did not err in summarily adjudicating Martinez's discrimination and retaliation causes of action.

### 1.3. The court properly granted summary adjudication on Martinez's accommodation and good faith interactive process claims.

The elements of a cause of action for failure to accommodate a disability under the FEHA are (1) the plaintiff has a disability under the FEHA or was regarded as having a disability, (2) the plaintiff is qualified to perform the essential

24

functions of the job with or without reasonable accommodation, and (3) the employer failed to reasonably accommodate the plaintiff's disability. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009–1010.)

" 'Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. [Citation.]' " (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252.) "Generally, ' "[t]he employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations . . . . [¶] . . . The employee, of course, retains a duty to cooperate with the employer's efforts by explaining [his or] her disability and qualifications. [Citation.] Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the [employee's] capabilities and available positions." [Citation.]' " (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222.) " ' " '[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it.' " ' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1167.)

"While a claim of failure to accommodate [under subdivision (m)] is independent of a cause of action for failure to engage in an interactive dialogue [under subdivision (n)], each

25

necessarily implicates the other." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.) "Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation. Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." (*Id.* at p. 62, fn. 22.)

Martinez argues that she was disabled by pregnancy when she was terminated and that L.A. Hardwood was therefore required to make reasonable accommodation for her and engage in a good faith interactive process, which it failed to do by refusing to allow her to take full days off for her prenatal appointments. Defendants contend that Martinez's claims for failure to accommodate and to engage in a good faith interactive process fail as a matter of law because Martinez did not have a disability under the FEHA and because she received every accommodation that she requested. We agree with both of defendants' contentions.

"A woman is 'disabled by pregnancy' if, in the opinion of her health care provider, she is unable because of pregnancy to perform any one or more of the essential functions of her job or to perform any of these functions without undue risk to herself, to her pregnancy's successful completion, or to other persons. An employee also may be considered to be disabled by pregnancy if, in the opinion of her health care provider, she is suffering from

severe morning sickness or needs to take time off for: prenatal or postnatal care . . . ." (Cal. Code Regs., tit. 2, § 11035, subd. (f).) In its summary judgment briefing, L.A. Hardwood argued that there was no evidence to support that Martinez was unable to perform the essential functions of her position due to her pregnancy and the trial court agreed. Martinez now contends that she was disabled under subdivision (f) because she needed to take time off for prenatal care.

Even if Martinez did not waive this claim by failing to raise it in her briefing below, she does not cite any evidence suggesting that a doctor instructed her to take time off for prenatal care. At most, the record supports that Martinez left work early or came late to attend her monthly prenatal appointments. She does not cite any authority supporting that an employee whose prenatal appointments cause her to occasionally take some time off work is disabled under subdivision (f). Thus, Martinez has failed as a matter of law to establish that she was disabled.

Moreover, even if Martinez had established that she was disabled under the FEHA after her pregnancy was confirmed by a health care provider,[7] Martinez testified that she did not request any accommodation other than taking time off work (i.e., coming in late or leaving early) to attend doctor's appointments.

---

[7] Martinez fails to explain how she could be disabled by pregnancy under the provision on which she relies—which requires that a health care provider render the opinion that she needs time off for prenatal care—before any health care provider had even confirmed that she was pregnant. (Cal. Code Regs., tit. 2, § 11035, subd. (f).) Thus, even if we are willing to assume for the sake of argument that Martinez was disabled by her pregnancy, we will not indulge the assumption that she was disabled before her pregnancy was confirmed.

She further testified that she was able to eventually obtain all the care that she sought. Martinez's unsupported contention that Chavez failed to accommodate her by letting her take the full day off for prenatal appointments is contradicted by her own testimony, which stated that the only accommodation she requested was coming late or leaving early, not missing work entirely. In the absence of any evidence that Martinez required or sought any other accommodation for her pregnancy, there is no triable issue of material fact as to whether L.A. Hardwood failed to meet any duty it had to accommodate or to engage in an interactive process.

### 1.4. The court properly granted summary adjudication on the harassment cause of action.

The FEHA prohibits an employer from harassing an employee "because of . . . physical disability . . . sex, [or] gender . . . ." (§ 12940, subd. (j)(1).) A supervisor may also be subject to personal liability for harassment. (§ 12940, subd. (j)(3).) Martinez brings a harassment claim against both L.A. Hardwood and Chavez. A harassment claim "requires a showing ' "that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [disability, sex, or gender]." ' [Citation.] . . . Since 'there is no possible justification for harassment in the workplace,' an employer cannot offer a legitimate nondiscriminatory reason for it. [Citation.]" (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 927.) Unlike discrimination claims, "harassment often does not involve any official exercise of delegated power on behalf of the employer," but instead "focuses on situations in which the *social environment*

28

of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706 (*Roby*).) In other words, "harassment is generally concerned with the message conveyed to an employee, and therefore with the social environment of the workplace, whereas discrimination is concerned with explicit changes in the terms or conditions of employment." (*Id.* at p. 708.)

"[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 63.) "[T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." (*Id.* at pp. 64–65.) Although a supervisor's official employment actions can provide the evidentiary basis for a hostile work environment gender harassment claim under certain limited circumstances, the key is showing that the actions had the "secondary effect of communicating a hostile message." (*Roby*, *supra*, 47 Cal.4th at p. 709.) "This occurs when the actions establish a widespread pattern of bias." (*Ibid.*)

29

"Whether the harassment is sufficiently severe or pervasive to create a hostile work environment 'must be assessed from the "perspective of a reasonable person belonging to [the same protected class as] the plaintiff." ' [Citation.] In making this assessment, we consider several factors, including ' "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' " (*Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 940.)

The record demonstrates that the only comments that Chavez made in connection with Martinez's pregnancy that she found offensive were the comments made on April 3. After that date, neither Chavez nor anyone else at L.A. Hardwood commented on her pregnancy in a manner that Martinez found offensive or negative. The only other comment that Chavez made that Martinez found offensive was when he told her she was doing more talking than working. This is "conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job" and thus is not actionable as harassment. (*Janken, supra*, 46 Cal.App.4th at p. 63.)

Martinez contends that a single incident of harassment may be sufficient to create a hostile work environment. This is true "if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." (§ 12923, subd. (b).) Conduct interferes with an employee's work performance if it results in the loss of a tangible job benefit or if the plaintiff satisfies the " ' "commensurately higher showing" ' " that the

30

conduct " ' "was pervasive and destructive of the working environment." ' " (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 284.)

Martinez contends that whether Chavez's conduct rises to this level is necessarily a question of fact. However, the cases she cites in support of this proposition did not involve an isolated comment by the supervisor. In *Ortiz v. Dameron Hospital Association* (2019) 37 Cal.App.5th 568, 582–583, the court held that there was sufficient evidence of severe and pervasive harassment where the "complained of conduct [by the supervisor] . . . included involuntarily transferring [plaintiff] to a unit where she had little or no experience without providing her with any training, and falsely accusing her of sleeping on the job, a terminable offense," as well as repeated comments by the supervisor that Filipino unit coordinators like the plaintiff were "stupid," "too old," "dummies," and "didn't speak English." In *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 43, which was not a summary judgment case, the court concluded that sufficient evidence supported the jury's determination of harassment where the employee was mocked for his stutter approximately 12 times over two years, including over the prison radio system and in front of a group of other employees. And in *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 468, the court held that summary judgment was improper where the chief deputy warden of the prison at which plaintiffs worked was having an affair with an employee who subjected the plaintiffs to harassment with impunity, including "loss of work responsibilities, demeaning comments in the presence of other employees, loss of entitlement to a pay enhancement and to disability accommodation, and physical

31

assault and false imprisonment." Thus, these cases bear little resemblance to the insensitive, but not overtly abusive or derogatory, comments made by Chavez on April 3.

Rather, the circumstances here are comparable to *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047 (*Holmes*). In *Holmes*, the plaintiff revealed that she was pregnant a month after she was hired as an executive assistant and told her employer she planned to work up until her due date and would be out on maternity leave for six weeks. (*Id.* at p. 1052.) The plaintiff disliked when other employees asked about her maternity leave and asked them to stop, which they did. (*Id.* at p. 1053.) A month after she revealed her pregnancy, the employer emailed the plaintiff about getting another person up to speed on covering her tasks. (*Ibid.*) She informed him that she would be taking her maternity leave earlier than previously discussed and might be out for the full four months permitted under California law. (*Ibid.*) The employer responded, " 'I need some honesty. How pregnant were you when you interviewed with me and what happened to six weeks? . . . That is an extreme hardship on me, my business and everybody else in the company. You have rights for sure and I am not going to do anything to violate any laws, but I feel taken advantage of and deceived for sure.' " (*Ibid.*)

The court concluded that "[a]n evaluation of all the circumstances surrounding [plaintiff's] employment discloses an absence of evidence from which a reasonable jury could objectively find that [the employer] created a hostile work environment for a reasonable pregnant woman. During the two months [the plaintiff] worked for [the employer], there was no severe misconduct or pervasive pattern of harassment." (*Holmes*, *supra*, 191 Cal.App.4th at p. 1060.) The court noted that other

employees ceased to ask questions about the plaintiff's maternity leave when asked. (*Ibid.*) With respect to the emails from her employer, the court concluded that, "[w]hen viewed in context, the e-mails . . . show nothing more than that [the employer] made some critical comments due to the stress of being a small business owner who must accommodate a pregnant woman's right to maternity leave. He recognized [the plaintiff's] legal rights, stated he would honor them, said he was not asking for her resignation, noted he had been pleased with her work, and simply expressed his feelings as a 'human in a tough business where people are constantly trying to take advantage of me.' He assured [the plaintiff] that 'it will work.' " (*Id.* at pp. 1060–1061.) The court observed that the FEHA is not "a civility code" and that "[t]he isolated incidents to which she points are objectively insufficient." (*Id.* at p. 1061.) The court acknowledged that pervasive conduct is not required where the harassment is sufficiently severe but concluded that the circumstances before it did not rise to that level. (*Ibid.*)

Chavez similarly expressed frustration that Martinez "got herself into this situation" and that he would have to train another employee to cover for her while she was on maternity leave. While these comments were offensive to Martinez, and likely would be to the average pregnant woman, "merely offensive" comments are not actionable. (*Lyle v. Warner Brothers Television Productions*, *supra*, 38 Cal.4th at p. 283.) These comments were not so humiliating that a reasonable pregnant woman would consider her workplace significantly altered for the worse or would have so feared hearing another such remark about her pregnancy that she would be unable to perform her job

33

duties. Chavez made no other inappropriate comments relating to Martinez's pregnancy, sex, or gender.

Martinez also contends that the trial court erred in focusing only on Chavez's comments and by not considering the incident with the cash box. There is no dispute that her cashbox was $150 short of the amount required by L.A. Hardwood's policies. It is also undisputed that Chavez did not state that he was issuing a written warning about the missing money because of Martinez's pregnancy. Issuing a written warning for noncompliance with company policy was a managerial action that does not constitute harassment. Martinez argues that this discipline constitutes harassment because Chavez required her to put in $150 of her own money to cover the missing amount. Once again, Martinez does not include any record citations in support of this assertion but instead refers to a prior argument section. As we have stated, the failure to identify relevant evidence in support of a claim at the point at which the claim is made results in waiver.

Even if we were to consider the issue, evidence of a single, improper employment action is objectively not evidence of a "widespread pattern of bias," which our Supreme Court has stated is necessary to show that official employment actions could have contributed to the hostile message the supervisor was expressing to the employee "in other, more explicit ways." (*Roby*, *supra*, 47 Cal.4th at p. 709.)[8]

---

[8] *Roby* bears little resemblance to the circumstances present here. The court in *Roby* observed that the supervisor's "shunning of [the plaintiff] during staff meetings," "belittling of [the plaintiff's] job," and "reprimands of [the plaintiff] in front of [her] coworkers" may have been "official employment actions done in furtherance of a supervisor's

Thus, we conclude that the record reflects an absence of evidence from which a reasonable jury could find that Chavez created a hostile work environment "for a reasonable pregnant woman." (*Holmes*, *supra*, 191 Cal.App.4th at p. 1060.)

**1.5. The court properly granted summary adjudication of Martinez's derivative causes of action.**

Section 12940, subdivision (k) provides that it is an unlawful employment practice "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." In order to maintain a claim for failure to prevent discrimination, harassment, or retaliation, there must have been an act of discrimination, harassment, or retaliation. " '[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred . . . .' Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except

---

managerial role" but also had "a secondary effect of communicating a hostile message." (*Roby*, *supra*, 47 Cal.4th at p. 709.) The supervisor also "made negative comments in front of other workers about [plaintiff's] body odor" which was caused by medication, "called [plaintiff] 'disgusting' because of the sores on her arms and her excessive sweating," "openly ostracized plaintiff in the office, refusing to respond to [her] greetings and turning away when [she] tried to ask questions," "made a facial expression of disapproval when [plaintiff] took rest breaks," and "overlooked [plaintiff] when handing out specialty food items, holiday gifts, and travel trinkets, although [the supervisor] regularly gave these small gifts to the other employees on her staff." (*Id.* at pp. 695, 709.)

where the actions took place and were not prevented." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289; see also *Featherstone v. Southern California Permanente Medical Group*, *supra*, 10 Cal.App.5th at p. 1166.)

Because Martinez cannot establish the underlying causes of action, her derivative claims for failure to prevent discrimination, retaliation and harassment must also fail.[9]

## 1.6. Martinez waived any challenge of her meal and rest break claims.

Martinez devotes only two sentences of her opening brief to her assertion that the trial court erred in granting summary judgment of her meal and rest break causes of action. She makes no citation to the record, but merely refers to a section of her statement of facts. (*Alki Partners, LP v. DB Fund Services, LLC*, *supra*, 4 Cal.App.5th at p. 590, fn. 8.) Further, Martinez does not develop her claim by citing or applying any legal authorities, apart from a passing reference to *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. "Appealed judgments and orders are presumed correct, and error must be affirmatively shown." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423 ["plaintiff bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court"].) Thus, Martinez waived her challenge as to these causes of action.

---

[9] Martinez does not address her cause of action for wrongful termination in violation of public policy.

### 1.7. There is no basis for an award of punitive damages.

"[W]here it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (*Id.*, subd. (b).) " '[S]ummary judgment "on the issue of punitive damages is proper" only "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." [Citation.]' " (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 762.)

Martinez argues that a reasonable jury could find clear and convincing proof of malice, fraud, or oppression based on Chavez's actions. Martinez further asserts that defendants' "bare legal conclusion that Chavez and Algazi were not officers or managing

37

agents" is insufficient to meet their burden on appeal,[10] and further argues that the owner of L.A. Hardwood, Doron Gal, ratified Chavez's conduct because Algazi spoke with him before she terminated Martinez's employment. We disagree.

"[T]o establish that an individual is a managing agent, a plaintiff seeking punitive damages must show that 'the employee exercised substantial discretionary authority over significant aspects of a corporation's business.' [Citation.] In this context, 'corporate policy' refers to ' "formal policies that affect a substantial portion of the company and that are of the type likely to come to the attention of corporate leadership." ' [Citations.]" (*CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1273.)

Although Martinez argues that defendants failed to put forth any evidence that Chavez was not a managing agent, she "bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court." (*Arnold v. Dignity Health*, *supra*, 53 Cal.App.5th at p. 423.) Martinez does not identify any substantial evidence that Chavez was an officer, director or managing agent of L.A. Hardwood. Further, and contrary to her assertion, defendants did more than assert the bare legal conclusion that Chavez was not a managing agent. Chavez stated in his declaration that he does not make and has never made corporate policy for L.A. Hardwood and that his role is limited to supervising employees that work in his location and ensuring that customers receive the products and services they need. The

---

[10] Notwithstanding this contention, it does not appear that L.A. Hardwood has ever disputed that Algazi was an officer of L.A. Hardwood.

owner of L.A. Hardwood submitted a declaration stating the same. Martinez does not identify any evidence contradicting these statements.

We further agree with defendants that Martinez's concession that Algazi did not hold any discriminatory or retaliatory intent defeats her claim that a punitive damages award could be based on Algazi's decision to terminate Martinez's employment. Similarly, although Algazi testified that she told Gal, the owner of L.A. Hardwood, about the fax incident and that she was going to speak with Martinez, there is no evidence that he expressed any opinion about the matter. Even if Gal endorsed Algazi's actions, it is undisputed that Algazi did not act in a discriminatory manner. Accordingly, there are no triable issues of material fact as to whether L.A. Hardwood is properly subject to punitive damages.

**2.      The court's evidentiary rulings do not require reversal.**

Martinez contends that the court committed reversible error with respect to its rulings on objections to her declaration and the declaration of Carolina Juarez, who was a customer service representative at the Pacoima location. We conclude that, to the extent the court erred in its rulings, any errors were not prejudicial and do not require reversal.

### 2.1.   Standard of Review

Martinez contends that *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437 and *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, among other cases, support that the de novo standard of review should apply to the trial court's evidentiary rulings on summary judgment. In *Reid*, the Supreme Court applied the de novo standard of review to evidentiary objections on which the trial

court had failed to rule, reasoning that "because there was no exercise of trial court discretion, the Court of Appeal had no occasion to determine whether the trial court abused it." (*Reid*, at p. 535.) The Supreme Court expressly declined to consider "whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid*.) "[T]he weight of authority since *Reid* supports application of the abuse of discretion standard. Cases considering this question and applying the abuse of discretion standard after *Reid* have been published by the First District, Second District, Third District, Fourth District (Division One), Fifth District, and Sixth District— in other words, essentially every district of the appellate courts of the State of California . . . ." (*Doe v. SoftwareONE, Inc.* (2022) 85 Cal.App.5th 98, 103, fn. omitted; *LAOSD Asbestos Cases* (2020) 44 Cal.App.5th 475, 485 ["The weight of authority in this state is that we apply an abuse of discretion standard when we review trial court evidentiary rulings."].)

As courts have observed, "application of the abuse of discretion standard is eminently sensible in light of the practical realities of evidentiary objections in summary judgment proceedings." (*Doe v. SoftwareONE, Inc.*, *supra*, 85 Cal.App.5th at p. 103; cf. *Ducksworth v. Tri-Modal Distrib. Servs.* (2020) 47 Cal.App.5th 532, 544, reversed on other grounds in *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918.) Given the large number of evidentiary objections that frequently accompany summary judgment motions, "trial courts typically rule on evidentiary objections in summary fashion, which often prevents us from determining the precise nature (i.e., principally legal or factual) of the trial court's ruling. And rulings on

40

evidentiary objections often 'involve trial courts making qualitative and sometimes equitable determinations,' which are the sort of decisions we typically review for abuse of discretion. [Citation.]" (*Doe*, at pp. 103–104; cf. *Ducksworth*, at p. 544 ["Because of the daunting complexity, volume, and pace of [the trial court's] decisionmaking task, the latitude implied by the abuse-of-discretion standard thus does make 'great sense.' [Citation.]"].)

We will follow the weight of authority and apply the abuse of discretion standard. Under this standard, "[a]n 'erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error." [Citation.]' [Citation.]" (*Daimler Trucks North America LLC v. Superior Court* (2022) 80 Cal.App.5th 946, 960.)

In addition to objecting to the Martinez declaration on relevancy, foundation, and hearsay grounds, defendants objected to substantial portions of her declaration on the grounds that it was inconsistent with her deposition testimony, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*).

In *D'Amico*, our Supreme Court concluded that, "when discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried, certain of those stern requirements applicable in a normal case are relaxed or altered in their operation." (*D'Amico*, *supra*, 11 Cal.3d at p. 21.) The court observed that, in *King v. Andersen* (1966) 242 Cal.App.2d 606, "the rule providing for liberal construction of counteraffidavits was held not to require reversal of a summary judgment for defendants where the plaintiff in an assault case,

41

although having stated in his counteraffidavit that unnecessary force was used, nevertheless had stated in a previous deposition that no force was used." (*D'Amico*, at p. 21.) It held that, " '[w]here . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition . . . we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*Ibid.*, quoting *King*, at p. 610.) The Supreme Court also cited *Newport v. City of Los Angeles* (1960) 184 Cal.App.2d 229, in which the opposing party challenged an affidavit submitted by the moving party on the ground that it contained facts not within the personal knowledge of the moving party, and noted that the affidavit was held to be sufficient where the moving party incorporated therein verified admissions of the opposing party. (*D'Amico*, at pp. 21–22, citing *Newport*, at p. 236.)

Thus, "[t]he *D'Amico* rule is about the evidentiary strength of admissions by a party and applies 'when discovery has produced an admission or concession [by] the party opposing summary judgment.' [Citation.] Those admissions 'have a very high credibility value' and 'should receive a kind of deference not normally accorded evidentiary allegations in affidavits.' [Citation.]" (*Forest Lawn Memorial-Park Association v. Superior Court* (2021) 70 Cal.App.5th 1, 13.) "In a nutshell, the [*D'Amico*] rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522.) However, "[w]hile the *D'Amico* rule permits a trial court to disregard declarations by a party which contradict his or her own discovery responses (absent a reasonable explanation for the discrepancy), it does not countenance ignoring other credible evidence that contradicts or

42

explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute." (*Id.* at pp. 1524–1525.)

There is dispute as to the appropriate standard of review with respect to rulings under *D'Amico*. In *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, the court concluded that "*D'Amico* does not state a rule regarding the admissibility of evidence; instead, the case provides guidance in determining whether a declaration that contradicts prior discovery responses is sufficient to create a triable issue of fact." (*Id.* at p. 604, fns. omitted.) The court thus "disagree[d] with statements in prior published cases that may be read to suggest *D'Amico* states a rule regarding the admissibility of evidence." (*Ibid.*, fn. 7.) Because the " '[t]he existence of a triable issue of fact is a legal question that we review de novo[]' [citations]," the court in *Harris* reviewed de novo the trial court's conclusion that a declaration was insufficient to establish a triable issue of fact under *D'Amico*. (*Ibid.*) In contrast, in *Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, the court held the abuse of discretion standard of review applied to the trial court's rulings on ' "evidentiary objections" ' under *D'Amico*. (*Id.* at pp. 657, 659.) Without deciding which standard is correct, we will review the court's rulings on objections made on *D'Amico* grounds under the de novo standard.

### 2.2. Martinez did not waive her ability to challenge the court's evidentiary rulings.

Before reaching the merits of the evidentiary objections, we address defendants' assertion that Martinez has waived her contention that the trial court's evidentiary rulings were an abuse of discretion because she failed to respond to their objections below. We reject this claim. "A party that objects to

evidence presented on a motion for summary judgment must either timely file separate written objections or object orally at the hearing. [Citations.] 'Evidentiary objections not made at the hearing shall be deemed waived.' (§ 437c, subd. (b)(5).) But neither section 437c nor the California Rules of Court require a party to file written opposition to the opposing party's objections or risk waiver. [Citation.]" (*Serri*, *supra*, 226 Cal.App.4th at p. 851, fn. 11; *Jane IL Doe v. Brightstar Residential Inc.* (2022) 76 Cal.App.5th 171, 176 [there is no rule that "extend[s] the forfeiture rule to require the proponent of evidence at the summary judgment stage to file written opposition to evidentiary objections"]; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 526 [no authority suggests that responses to objections must be made in the trial court to preserve a challenge to its rulings on appeal].)

### 2.3. The court did not commit reversible error with respect to its evidentiary rulings on the Martinez declaration.

We conclude that there is no reasonable probability that a result more favorable to Martinez would have been reached in the absence of any errors committed by the trial court in its evidentiary rulings. (*Daimler Trucks North America LLC v. Superior Court*, *supra*, 80 Cal.App.5th at p. 960.)

Objections 1 through 3 concern Martinez's discussion with Chavez on April 3. Defendants argue that her declaration is inconsistent with her deposition and thus was properly excluded under *D'Amico*. They further point out that Martinez's statements in her declaration that she asked either to come in late, leave early, or to take the day off to confirm her pregnancy are inconsistent with her deposition testimony that she asked for

"at least a day off" to confirm her pregnancy. Martinez also stated in her declaration that Chavez demanded that she confirm the pregnancy, whereas Martinez testified that, when she informed Chavez that the pregnancy was not confirmed, Chavez stated that the home test might be mistaken and she responded that she needed to have it confirmed.

We need not decide whether the court properly disregarded this evidence under *D'Amico*. Even if the court had erred in its rulings with respect to these objections, there is no reasonable probability that Martinez would have obtained a more favorable result had this evidence been admitted. The declaration statements at issue were largely duplicative of her deposition testimony, albeit with the minor inconsistencies discussed. Moreover, and more importantly, there is no substantial evidence to support that Martinez was disabled because of her pregnancy before her pregnancy was confirmed by a health care provider. Thus, even if her declaration further supports that Chavez did not agree to allow Martinez to have her pregnancy confirmed during work hours (a claim that was already in the record via Martinez's deposition testimony), Martinez would not have been more likely to succeed on her claims for failure to accommodate or to engage in a good faith interactive process.

We likewise find no reversible error with respect to objections 4 and 5. Objection 4 pertained to Martinez's statement that Chavez was abrasive when she asked for time off to go to her prenatal appointments and did not permit her to take the whole day off for her appointments. Objection 5 addressed Martinez's statement describing her complaint to Palma regarding Chavez. Martinez testified that, other than Chavez's reaction to her pregnancy on April 3, she had no issue with how he treated her in

relation to her pregnancy. Martinez also testified that the reason that she did not like working with Chavez after she revealed her pregnancy was solely because of his reaction to her pregnancy on April 3 and that she complained about that reaction to Palma. We conclude that Martinez's statements in her declaration that Chavez was abrasive after April 3 and she complained to Palma about his abrasiveness directly contradict her deposition testimony, and thus were properly disregarded under *D'Amico*. Moreover, even if the court erred in disregarding evidence that Chavez was abrasive, Martinez's deposition testimony establishes that she did not find this conduct to be " 'subjectively offensive' " as is required for conduct to be actionable harassment. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1044.) Apart from her claim that Chavez was abrasive and rude after April 3, the declaration statements addressed by these objections are duplicative of deposition testimony that was admitted. Thus, it is not reasonably probable that the outcome would have been different had this testimony been considered.

Objections 6 and 7 addressed Martinez's claim that Chavez was rude towards her and yelled at her for going to Palma with her issues. As discussed, according to her deposition testimony, the only comments regarding her pregnancy that Martinez found offensive were those made April 3. When asked whether she was offended by Chavez's conduct in any other way, Martinez identified his statement on one occasion that she was doing more talking than working to be offensive, but testified that Chavez did not say anything else to her that she found upsetting or disliked. Thus, we conclude that Martinez's claim that Chavez snapped and yelled at her and that she cried on another occasion

46

directly contradicts her deposition testimony, and that the trial court did not err in disregarding this evidence under *D'Amico*.

Objection 8 addressed Martinez's statement that she asked Chavez for a transfer to the Pacoima location and he denied it. L.A. Hardwood argues that the court properly disregarded this evidence because Martinez unequivocally testified that she did not request a transfer to Pacoima. We agree that these claims are contradictory and mutually exclusive under *D'Amico*. Martinez argues that testimony from Chavez and Algazi supports that Martinez did at some point inquire about a transfer, but that there were no positions open in Pacoima. Algazi recalled that Martinez's request for a transfer was in response to an issue that arose between Martinez and another coworker who had claimed to be sick but whom Martinez saw posting about a vacation to Mexico. Even if we assume the court erred in disregarding this evidence because there is other evidence in the record that supports that Martinez at some point sought a transfer, we see no reasonable probability that Martinez would have obtained a better outcome had this evidence been considered. Other evidence in the record supported that Martinez was not happy with Chavez as a manager after his reaction to her pregnancy.

Objection 9 concerned Martinez's statement that when her cash box was found to be $150 short, she was told to put her own money in to make it whole, which she was not required to do under company policy. Even if the court erred in excluding this evidence, it was cumulative of evidence already before the court. In deposition testimony relied upon in her separate statement of material facts, Martinez stated that she had told Chavez, "I told you that the money was missing, and you told me to put it back. So even after you made me put it back out of my own pocket, you

are still going to write me up for a warning for it." Similarly, in her separate statement of material facts, Martinez relied on deposition testimony from Algazi in which Algazi stated that she thought she recalled that Martinez had paid the money out of her own pocket and that they remedied that issue when they terminated her employment, and that it was company policy that Martinez was not responsible for that money. Thus, there is no reasonable probability that a result more favorable to Martinez would have been reached in the absence of the error.

Objection 10 concerned Martinez's description in her declaration of the meeting in which she was terminated, which was almost entirely duplicative of the version of events set forth in her deposition testimony, except for her claim that Chavez spoke during the meeting, when she previously testified that he said nothing. The court properly disregarded the portion of this statement that directly contradicted Martinez's deposition testimony. The remainder of the statement was cumulative of other evidence, and thus there is no reasonable likelihood that the declaration statement would have altered the outcome.

Objection 11 addressed Martinez's claim in her declaration that she did not destroy any application that was legible and not a duplicate, while Objection 12 addressed Martinez's statement that she never saw Reyes or Arreola look in her trash can or remove documents from it. To the extent that either objection was improperly granted, the error was harmless. As we have stated, the issue in this case is not whether L.A. Hardwood's decision to terminate Martinez's employment was wise or correct, but whether the decision was discriminatory. (*Guz, supra*, 24 Cal.4th at p. 358.) Thus, it is not probable that this evidence would have resulted in a more favorable outcome for Martinez.

Moreover, Martinez also testified that she had never crumpled or thrown away an application that was legible.

Objection 14 concerned Martinez's statements that she was unable to take rest breaks. We agree with defendants that Martinez's statement in her declaration that Chavez, through Chavarria, told the customer service representatives that they could not take their rest breaks directly contradicts Martinez's deposition testimony and was properly disregarded under *D'Amico*. Martinez testified that no one ever told her she could not take her rest breaks, but she felt that she had to because Chavarria would say so. When expressly asked who told her that she had to keep working, Martinez stated it was Chavarria, not Chavez. Although the remainder of the evidence subject to this objection was not inconsistent with her prior deposition testimony, we conclude that any error in excluding this evidence was harmless because it was cumulative of other evidence before the court.

Finally, with respect to objections 15 and 16, which pertain to Martinez's claim that she suffered emotional and mental injuries and lost wages, we agree with defendants that any error in excluding this evidence was not prejudicial because it did not go to the merits of her claims, but to the question of damages.

### 2.4. The court did not commit reversible error with respect to its evidentiary rulings on the Juarez declaration.

We conclude that the court did not abuse its discretion in excluding statements made in the Juarez declaration. Juarez stated that she "became aware" or understood various facts relating to Martinez's employment and the treatment of employees in the downtown Los Angeles office, despite not

49

working in that office. She also stated that she "became aware" that a driver for L.A. Hardwood was injured on the job and that Chavez told him that he should tell a doctor that he was injured on his own time. Juarez did not explain the basis for this knowledge in her declaration, but her deposition testimony confirms that it was based on discussions with other people, not her personal observations. The trial court did not abuse its discretion in excluding this evidence. (See *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1150 ["[t]o testify, a witness must have personal knowledge of the subject of the testimony"]; Evid. Code, § 702, subd. (a) ["Subject to Section 801 [expert testimony], the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter."].)

Juarez further stated that employees with which she spoke stated that they thought that Martinez's employment was terminated because of her pregnancy. Statements "made other than by a witness while testifying at the hearing" and "offered to prove the truth of the matter stated" are hearsay and, "except as provided by law," are inadmissible. (Evid. Code, § 1200, subds. (a), (b).) Martinez does not argue that any hearsay exception applied to these statements.

According to her deposition testimony, Juarez's statement in her declaration that employees regularly ripped up illegible and duplicate applications was based solely on her experience at the Pacoima location. In any event, the court did not abuse its discretion in concluding that it is irrelevant to the issue of whether Martinez's termination for purportedly destroying an original and legible application and failing to provide any explanation was pretextual. Similarly, her statement that L.A. Hardwood employees were unable to take rest breaks was based

50

solely on her experience in the Pacoima office. The court could reasonably conclude that this evidence was irrelevant to the issue of whether Martinez was able to take breaks in the downtown Los Angeles office. Finally, the court's exclusion of Juarez's statement that another pregnant employee had been terminated at the Pacoima location on relevancy grounds was not unreasonable. Juarez did not discuss the circumstances of that employee's termination in her declaration but testified that she did not know whether the employee had done anything wrong.

## DISPOSITION

The judgment is affirmed. Plaintiff and appellant Melissa Martinez's request for judicial notice, filed June 22, 2022, is denied. Respondents and defendants L.A. Hardwood Flooring, Inc. and Ray Chavez shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

BENKE, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.